**Betty HARRIS, Administratrix of the Estate of Rosa Lee Rock, Movant,**

v.

**James ROCK, Fred Rock, Robert Rock, Dallas Rock, Elizabeth Escue, Norma Hobdy, Joyce Fogleman, and Peoples Bank & Trust Company, Respondents.**

No. 89–SC–509–DG.

Supreme Court of Kentucky.

Sept. 27, 1990.

Rehearing Denied Dec. 27, 1990.

James C. Brantley, Turner, Brantley & Lowther, Dawson Springs, for movant.

Harold M. Johns, Dillingham and Johns, Elkton, Leif C. Raliff, Madisonville, for respondents.

VANCE, Justice.

The question is whether deposits by a husband into accounts jointly held with his children can defeat his widow's right under K.R.S. 392.020 to receive one-half of his surplus personalty upon his death.

Rosa and Amos Rock were married August 10, 1971. Each of them had children by a previous marriage. During the course of their marriage, Amos acquired numerous certificates of deposit, each account bearing only two names; namely Amos Rock and one of his children, or Amos Rock and Rosa Rock. At the time of his death there was approximately $20,000.00 in joint accounts with each one of his seven children, and $20,000.00 in joint accounts with his wife, Rosa.

Following his death, Rosa filed this action to recover her dower interest in one-half of the personalty of Amos Rock pursuant to K.R.S. 392.020, including the money in the various joint accounts.

The respondents contend that K.R.S. 391.315(1) controls the decision. It provides as follows:

"(1) Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created...."

*Id.*

The trial court rendered judgment for the widow. The Court of Appeals reversed the judgment, and we granted discretionary review. We now reverse the decision of the Court of Appeals.

The right of dower is one of long standing. A surviving spouse is entitled to an absolute one-half interest in the surplus personalty of a deceased spouse. K.R.S. 392.020. Surplus personalty as used in the statute means the personalty remaining after the payment of the debts, funeral expenses, charges of administration, and widows exemptions have been deducted from the gross personalty possessed by the decedent at the time of his death. *Mattingly v. Gentry,* Ky.App., 419 S.W.2d 745 (1967); *Talbott's Ex'r v. Goetz,* 286 Ky. 504, 151 S.W.2d 369 (1941). The right to dower vests at the time of marriage or at the time of acquisition of subsequently acquired property. *Kentucky Bank and Trust Co. v. Ashland Oil and Transportation Co.,* Ky.App., 310 S.W.2d 287 (1958); *Wigginton v. Leech's Adm'x.,* 285 Ky. 787, 149 S.W.2d 531 (1941).

In *Martin v. Martin,* 282 Ky. 411, 138 S.W.2d 509 (1940), we held that a widow was entitled to dower in property that her intended husband disposed of shortly before their marriage in an attempt to defeat the claim by his intended wife to dower.

We have held in many cases that the widow's right to dower cannot be defeated by a gift by her spouse of all, or more than one-half, of his property to another with the intent to defeat the claims to dower. In *Rowe v. Ratliff,* 268 Ky. 217, 104 S.W.2d 437 (1937), the purchase of real property by a husband who took title in the name of his mother was held subject to the dower interest of his widow, and in *Benge, et al. v. Barnett,* 309 Ky. 354, 217 S.W.2d 782 (1949), we reiterated that an attempted gift by a husband of more than one-half of his personalty in an attempt to defeat the dower interest of his widow would be set aside.

■ A husband is precluded not only from making gifts during his lifetime to defeat the dower interests of his wife, but he is also prohibited from disposing of his property by will to defeat dower because, in such a case, the widow can renounce the will and take her interest as provided by K.R.S. 392.020. *See* K.R.S. 392.080.

In *Anderson, Jr. v. Anderson*, Ky.App., 583 S.W.2d 504 (1979), a deposit of money into a joint account between the decedent and his children was held to be subject to the assertion of a dower interest by his widow.

It is true, as the respondents contend, that the cases cited hereinabove do not consider the effect, if any, of K.R.S. 391.-315 upon K.R.S. 392.020. No statute has expressly repealed the provisions of K.R.S. 392.020. The respondents contend, however, that K.R.S. 391.315 has done so by implication. We do not find any conflict between K.R.S. 392.020 and K.R.S. 391.315 such that the latter statute can be said by implication to repeal the former.

■ It is true that K.R.S. 391.315 provides that funds deposited into a joint account belong to the survivor as against the estate of the decedent upon the death of the other party to the account, but this is subject to a statutory limitation that the funds do not become the property of the survivor if there is clear and convincing evidence of a different intention at the time the account was created. We think there is another limitation, necessarily implied in law, that the survivor of parties to a joint account cannot become the owner of the funds in the account upon the death of the other party if the party who deposited the funds was not legally entitled to dispose of them in such a manner.

K.R.S. 391.315 relates to disputes between the estate of a decedent and the survivor of parties of a joint account to the proceeds of the joint account. While K.R.S. 391.315 is a perfectly appropriate statute to settle a dispute between the estate of a decedent and the surviving party to the joint account when there is no clear and convincing evidence of the intent of the parties at the time the account was opened, it is not an appropriate statute to accomplish a transfer of ownership of funds as to which the depositor into the account had no right of disposition. Most certainly, a deposit into a joint account cannot defeat the right to recover the funds so deposited by one who has a legal claim of ownership thereof.

It would go without argument that stolen funds cannot legitimately be transferred to the survivor of a joint account by virtue of the fact that the thief had deposited those funds into a joint account. That would be true because the depositor simply had no legal right to dispose of the money so deposited.

■ Likewise, it has long been the law of Kentucky by virtue of K.R.S. 392.020 that a husband has no legal right to dispose of more than one-half of his property with intent to defeat a dower claim by his widow. It follows that a husband cannot be permitted to circumvent the law and intentionally defeat a dower claim by means of a deposit into a joint account with someone other than his wife. We interpret K.R.S. 391.315(1) to mean that upon the death of a party to a joint account, the funds on deposit therein do not belong to the survivor if:

(1) there is clear and convincing evidence of a different intention at the time the account was created, or (2) if the depositor was not legally entitled to make such a disposition of the funds.

■ Absent an agreement of the parties, a disposition of property with the intent to defeat the right of dower creates a presumption of fraud upon the surviving spouse. The deposit of approximately seven-eighths ($7/8$) of the personal estate of the decedent in this case into a joint account with his children leaves no doubt of his intent to defeat the movant's dower interest, and as such, raised a presumption of fraud which was not rebutted.

The respondents rely upon *Herren v. Cochran*, Ky.App., 697 S.W.2d 149 (1985), and *Marcum v. Marcum*, Ky., 377 S.W.2d 62 (1964).

*Herren v. Cochran, supra,* is not applicable because the wife had released her claim to dower in an agreement in which she had received an interest in her husband's realty and one-fourth (¼) of all monies left in his estate at his death. It was held that money deposited by the husband into a joint account was not left in his estate at the time of his death. It was further held that the joint account was not established with an intent to defeat dower since the wife had released her claim to dower. In the present case, there was no release of dower, and the widow has simply pursued her right to recover her dower interest in funds which were disposed of in a manner to defeat her dower claim. As we said in *Martin v. Martin*:

"... a man may not make a voluntary transfer of either his real or personal estate with the intent to prevent his wife, or intended wife, from sharing in such property at his death and that the wife, on the husband's death, may assert her marital rights in such property in the hands of the donee."

*Martin,* 138 S.W.2d at 515.

*Marcum v. Marcum, supra,* is not applicable. It involved the ownership of government bonds bought in the joint names of a man and his sons. No question of intent to defeat dower rights was involved. The only question was whether the bonds should pass as intestate property of the purchaser or be declared the property of the survivor of the named co-owners. The issue was decided as a matter of contract in that the bonds were issued by federal regulations which provided that in the event of the death of one of the joint owners, the survivor should be recognized as the owner.

The respondents contend that by a parity of reasoning, K.R.S. 391.315 should be interpreted that they, as survivors, should be recognized as the owners of the joint accounts. While this may be true, the respondents fail to recognize that the judgment of the trial court merely allowed the movant to recover from them as donees one-half of the value of the certificates of deposit in the joint accounts. The judgment permitted the respondents to control the accounts, but required them to pay the respondent one-half of the sums deposited in the accounts.

An issue was raised in the Court of Appeals as to whether the claim of Rosa Rock was personal to her, and therefore extinguished upon her death. The contention was that the litigation could not be continued by the substitution of the administratrix of the estate of Rosa Rock as a party to the action. The Court of Appeals did not decide this question in view of its holding adverse to the movant on other grounds, and neither party has briefed the issue in this court.

We reverse the decision of the Court of Appeals, and we remand the case to the Court of Appeals for its determination of the question of whether the substitution of the administratrix of the estate of Rosa Rock was proper.

STEPHENS, C.J., and COMBS, GANT and WINTERSHEIMER, JJ., concur.

LEIBSON, J., dissents by separate dissenting opinion in which LAMBERT, J., joins.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

The Majority Opinion is short on facts and long on *new* law.

These are the facts appearing uncontested in the record, and not part of the Majority Opinion:

This was the second marriage for Amos Rock, the decedent. His first marriage to Menda Rock ended in her death in 1969. It lasted 48 years and resulted in ten children, seven of whom are surviving. During their marriage, Amos and Menda acquired real estate valued at approximately $36,000. Additionally, as a result of Veteran's disability benefits awarded to their son William, Amos and Menda received upon his death an additional $59,000. Subsequent to Amos' marriage to Rosa Lee Rock in 1971, this money and more accumulated by his savings from these accounts was deposited in joint bank accounts, in the form of certificates of deposit, in eight equal amounts,

seven with his surviving children and one with the new wife, Rosa Lee. As the trial court stated in its judgment:

> "It appears abundantly clear from the evidence, and the Defendants concede the point, that Amos painstakingly accomplished his own estate plan to leave his estate in eight equal parts, to his seven children and his widow."

There was no finding by the trial court that any of this was done surreptitiously or with intent to defraud the surviving widow, or even that it was done without her knowledge and consent. It was clear, as the trial court stated, that Amos' "purpose in transferring his funds into the remaining seven survivorship moieties was clearly to assure that each child would take his or her one-eighth of his estate and that Rosa would not share therein." This openly avowed "purpose," in and of itself, is not fraud, let alone fraud sufficient to vitiate his *inter vivos* conveyance of the amounts in these accounts. As stated in *Martin v. Martin*, 282 Ky. 411, 138 S.W.2d 509, 514 (1940):

> "After all, an action of this character is based on a fraudulent act of a husband, or intended husband, seeking to deprive a wife, or intended wife, of a right to share in his property."

The Majority decision in the present case overrules KRS 391.315(1), the portion of the Probate Code intended to control joint accounts, which provides in pertinent part:

> "Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created."

The Majority Opinion does this by stating there is a "limitation, necessarily implied in law" on this statute, a limitation supposedly arising by reason of the inchoate dower interest in a spouse's property. An inchoate interest is one "which is not a present interest, but which may ripen into a vested estate, if not barred, extinguished, or divested." *Black's Law Dictionary*, 5th ed. 1979. Presumably, because of this inchoate interest, a married person is "not legally entitled to dispose of [his personal funds] in such a manner." This is new law not now justified by any previous decision of this Court. It is a law that may put in jeopardy any financial transaction with a married person and all property jointly owned except where such property is jointly held with one's spouse.

Although one might assume otherwise from a casual reading of the Majority Opinion, a dower interest in this Commonwealth is not a constitutionally protected common law right, but an interest defined by a statute, KRS 392.020, and as such it is confined to the "surplus real estate of which the other spouse ... was seized of an estate in fee simple at the time of death," and "the surplus personalty left by the decedent." There is no inherent limitation on a married person's right to dispose of his or her separate property, to spend or make gifts *inter vivos*, simply by reason of marriage, and such a blanket prohibition would create chaos in the marketplace, placing all transactions by married persons under a cloud. There is, of course, a restriction on practicing fraud, on one's spouse or on anyone else for that matter, but Amos Rock did not practice fraud simply by placing his individual funds in joint survivorship certificates of deposit with his children. Quite obviously, when KRS 391.-315(1) provides that property deposited in a joint account shall at death belong to the survivor, it does not apply to property proved to have been placed in such account with intent to defraud a third party, spouse or otherwise. But fraud was not proved in this case, and KRS 391.315(1) should prevail in its absence.

Any lingering doubt as to whether KRS 391.315(1) applies to the present situation is put to rest two sections later by KRS 391.-325, which states:

> "Any transfers resulting from the application of KRS 391.315 are effective by reason of the account contracts involved and this statute and are not to be considered as testamentary."

So, how does this property, these joint accounts, get to be *surplus* at death, subject to the dower statute? It doesn't, unless there is proof someone has been defrauded. The Majority Opinion has not attempted to discuss KRS 391.325, or to explain why it has no impact in this case. Nevertheless, it appears that both of these sections (KRS 391.315 and .325) were adopted in 1976 when the General Assembly adopted Article VI of the Uniform Probate Code to codify the rights of parties to survivorship bank accounts. The effect of the present decision is to create controversy about the ownership of the funds on deposit in such accounts when the statutory purpose was to dispel such controversy.

The Court of Appeals held KRS 391.315 and .325 applied to the present transactions, the *inter vivos* deposits in joint names with right of survivorship, because "we cannot say from a review of the record below that any evidence of fraud on the part of Amos was established below." I agree.

The Majority Opinion has gone to such extreme that no property may henceforth be deposited by a married person in a joint account with anyone other than his spouse free from a dower interest which will become vested if his or her spouse survives. It is now the rule of this Commonwealth that a married person cannot dispose of his or her own money unless his spouse joins in the transaction. I disagree.

LAMBERT, J., joins this dissent.